May it please the court, Kang He, on behalf of the appellant Mario Alberto Reyes Mena. Mr. Reyes Mena has foreign official immunity for a military operation that was authorized by the Salvadoran government and that took place entirely on Salvadoran soil. In the 1980s, El Salvador reached a breaking point in its nation's history. The country became engulfed in a civil war about the spread of communism, and many countries, including the United States, faced the same problem, and they battled it in their own sovereign ways. In El Salvador, thousands of guerrillas, armed by the Soviet Union, tried to take the country by force. It was a brutal war, with armed combatants on both sides, and it was not a conventional war, as the term guerrillas may imply. The government of El Salvador has not made a suggestion for immunity in this case. That's correct, and that's not required, Your Honor, under the case law. I understand, but in fact, they've seeked to prosecute your client. That is correct as well, Your Honor, but there is a difference between what is essentially a merits determination of the issue and the jurisdiction issue that this court faces. Do we let El Salvador handle that matter on its own, or is it for the U.S. courts to interfere with that process? The point is a factual question. In other words, if you're acting as a sovereign, carrying out military orders, it's one thing as an agent, but factually, if the sovereign says, no, you were not carrying out military orders, that's a factual matter. But there are other facts in this case that we probably ought to look at and then hear what you say about them, but we're talking about unarmed journalists, right? Your Honor, that's what the other side alleges. Wasn't that found by various inquiries? Yes, but Your Honor, we're not here to determine what the merits are of this. It's a matter of jurisdiction. No, but we are interested, I believe, in determining the nature of the conduct, whether it's immune. If it is a sovereign act, that's one thing, but if it is at random killing, non-judicial killing, then it may fall within this range of acts that don't constitute sovereign acts. And Your Honor, a few clarifications. One, El Salvador has not come out and said that the operation was never authorized. They just don't support. And just because a new regime that comes in, in hindsight, decides to launch a prosecution against a prior regime, it doesn't make the conduct itself unofficial. In fact, the complaint pleads facially that this was an official act, that at the time it was authorized and ordered by the Salvadoran government, that the order came from the top echelon, and that this was part of Salvador's military strategy to win its civil war. And that's important because our courts should not be used to judge El Salvador's civil war strategies, much like Salvadoran courts should not judge the military strategies that the Union used to win the American Civil War. Comedy dictates that we allow El Salvador, which Judge Agee did point out, to use its own courts to decide this dispute. And if the United States… The United States government hasn't made a suggestion to the community either. That's correct, Your Honor. They have not. But again, that's not required. In Sementar, the Supreme Court did say, in the absence of a statement of interest, we proceed on whether foreign official media exists based on the factors at issue. So why didn't our decision in Youssef control the outcome of this case? Your Honor, it doesn't control because, and again, Youssef did apply a juice cogent's exception. First of all, we're not asking the court to overrule Youssef, but to recognize it for what it is. It was a common law holding that depends on the facts of the case. And there's three reasons why Youssef does not govern here. First, Youssef involved an official from an unrecognized government, but Mr. Reyes-Mena is from a recognized court. The court also said when it addressed that point that that was an alternative basis for its finding. Your Honor, it was one in which supported the finding. And I think what matters, though, in any common law holding is we look to the facts. That was the facts that were presented to the court in Youssef, and that was one of them. The second is that the State Department expressly opposed immunity in Youssef, and they've not commented here. And the third is that there are substantial comity concerns, especially considering that El Salvador is using its own courts to address this matter. And that underscores – So is your argument that the juice cogent's, if that's how you pronounce it, norm doesn't apply unless there is a country which simply does not have a recognized government, and that that's the only circumstance in which it would apply? No, Your Honor, we're not asking the court to rule any broader than the facts of this case. We're asking the court to clarify that Youssef does not apply to the facts here. And it's very different, for example, in what happened in Warfa, where the court was presented with an argument from counsel there that Youssef controlled. And I believe, Judge Agee, you wrote the opinion in which you said that counsel asked us to overrule Seventar entirely. But that's not what we're asking the court to do here. Besides those comity concerns, there's also a key difference in the conduct that's alleged. In Youssef, the court had no occasion to consider an authorized military operation involving combatants on both sides. Bottom line, tell me this. After Youssef and Warfa, is there a juice cogent's exception? I'm sorry, Your Honor, could you repeat the question? After those cases, does the juice cogent's norm apply? In what sense? In this case or generally? If there are circumstances, is that a valid legal doctrine? Your Honor, if you're asking me whether I think it's a valid legal doctrine, I don't think so. But the court doesn't have to decide that here today. Again, we're just asking the court to clarify. We've already decided it, haven't we? Excuse me, Your Honor? Haven't we already made that determination? The determination was made under the facts of Youssef. And again, Youssef there – I'm unclear on the last answer you gave to Judge Agee. Do you disagree that the doctrine exists, juice cogent's? So the doctrine itself, juice cogent's, which is just about the norms, there is some existence of that in the world. I believe, for example, the United Nations has that. Are you saying we should not apply it? In other words, I'm not sure what the rules you're advocating here. In other words, if it applies, then there is a list of crimes that have been included under that which are not considered to be sovereign acts. Your Honor, what I'm saying – And the D.C. Circuit listed them, but I think other sources have listed them as well as international cases. The question is whether – I mean you say continuously it's not part of international law in your brief. And yet every case I see says it's part of international law. Your Honor – And they actually use that word international law. It's not a part of international law in the sense that – Where do we get international law? Word Youssef obtained international law was citations to international cases. It ranged, for example, in the United Kingdom. But if you look at international law and the cases that are cited in our briefs, none of those cases – those international cases actually support application of a juice cogent's exception in a civil case. In the U.K., there was a case in which the court said we will not apply juice cogents here in a civil matter, but there are examples of its application in criminal law. There's examples of its application in international law where the juice cogent's conduct occurs within the forum state. And that's a big distinction because, again, it deals with jurisdiction and whether the court, the forum court, has that ability to decide that claim. Congress, too, in the FSIA, which I recognize the FSIA doesn't apply strictly to the foreign officials. But it's important to note the FSIA because foreign officials derive their immunity from the state. And so if the state has that immunity, so too should the foreign officials. And in the FSIA, Congress does not recognize such a type of exception. That's too general. I mean obviously if they're acting for the sovereign within the scope of the sovereign acts, as I understand the principle as articulated, is however we want to say, use cogents or juice cogents, English or Latin, whatever. It seems to me if it applies, it basically says an act that is juice cogents is not a sovereign act and therefore not protected. Isn't that what your understanding is? And, Your Honor, it doesn't apply because the – I'm sorry. Let's stay with it first as it's understood, whatever it's applied. Yes. So if an act is a juice cogents act, then there's no immunity. It's not a sovereign act. It's not a legitimate sovereign act and therefore enjoys immunity. Your Honor, we believe that's a legal fiction that a sovereign can never authorize a juice cogents or conduct that leads to a juice cogents violation or a juice cogents violation. I don't know that you've answered the fundamental question yet. Do you believe that the juice cogents norm is a principle of American law?  No, I do not, Your Honor. And the reason why is because if we go through the – So the decisions that have applied it, in your view, are simply wrong. Your Honor, I do believe that use of application was wrong. But again, we're not asking the court to overrule it entirely. I'm having trouble understanding your whole argument then because either you're arguing juice cogents is not applicable, which I'm now hearing you say, or you say this conduct in this case didn't fall within juice cogents. Cogents. And it seems to me if juice cogents is an applicable principle, then the question we look at is the nature of the conduct here to see whether it falls within it and therefore immunity is enjoined. But if it doesn't exist at all, I think I missed that a little bit then, that you think it's not a proper principle of American law. And, of course, we have cases that have applied. The D.C. Circuit and our court have both recognized it, right? I don't believe the D.C. Circuit has recognized the juice cogents exception. I think it's important to note that when the use of court recognized it, it was done in the context where there was no recognized – there was no comedy to be given. Let's step back then. What is your argument on appeal? There is no such doctrine and, therefore, it should not have been applied. Or is your argument that the conduct in this case did not fit it? Your Honor, our argument is more so the former. But to clarify, we're not asking the court to overrule Yusuf. It's that the juice cogents exception that was applied in Yusuf does not apply to the facts here. And a big part of that are the comedy concerns. When the Yusuf Court applied it, there was no comedy owed to the Somali government. But there is a comedy interest here, and comedy dictates that we allow El Salvador – So your view of that is that the juice cogents only applies when there are acts in a country which has no recognized government? That would be Yusuf, right, Your Honor? No recognized government, no comedy owed. Is that your position or not? Yes, Your Honor. And where do you get that – where do you find support for that, that it's limited, so limited? Except for it's a particular application in the one case. Your Honor, and I wish the opinion had been more clear as to it, but the principle I draw upon is just the notion of common law holdings and how they develop incrementally based on the facts of the case. It's not uncommon for this court and other courts to revisit prior decisions and make clarifications. Oh, no, I understand that, but I'm trying to – I'm having difficulty in understanding what principles we ought to be applying. And you're basically saying juice cogents is foreign to this case. We shouldn't be applying it at all. Legally wrong to apply it. It would be wrong to apply it to the facts of this case, Your Honor. The facts of this case are – the distinguishing facts of this case is that there was no government in control versus a government in control. Is that the issue?  It's the difference between an unrecognized government and a recognized government, but also the events that allegedly occurred. When we talk about Yusuf, it was an alleged genocide. It wasn't a situation – But now that you're going to facts, I want to still stay a little bit with what we're supposed to be applying. And so you're basically saying we should – there's no doctrine to apply and we should throw it out. There's no law supporting it in a case where there's a sovereign. That's correct. Even though the sovereign in this case disowned the conduct. Your Honor, the sovereign in this case did not disown the conduct. They've never said this was never authorized by the sovereign, and it's a situation – As a sovereign act, I'm talking about. It was a sovereign act, Your Honor. It was a sovereign act. The other side has pled it, and El Salvador has not come out and said otherwise. Yes, they have prosecuted for it, but it doesn't render what occurred a sovereign act. It just so happens, if you look back at history, there are many instances of sovereign acts that occur in which, for example, the use of Agent Orange in Vietnam, now banned. Also the use of chemical weapons in World War I, now banned. Those are still sovereign acts. Coggins includes, as articulated by some courts, includes, for instance, slavery. It includes nonjudicial killings, which is the issue here. Now a nonjudicial killing means without any hearing, without any – you just shoot. The question is, is that recognized as a sovereign act even though the sovereign orders it? And the principle, as I understand it, is not. You can try to extend it to other things where sovereigns act wrongly or do the wrong things, but if you just start shooting people. Your Honor, I see my time is up. Do you mind if I answer the question? Please answer. I do believe that if a sovereign does order and authorize it, it is a sovereign act. And that's what we're talking about here because the other side has not alleged that Mr. Reyes Mena has acted in his personal capacity or went rogue. He acted under orders of the Salvadoran government during its wartime mission and following its strategies. And that's why the court should clarify. USIP does not apply. Thank you. May it please the Court. The sole issue on appeal is whether the defendant is entitled to conduct-based immunity for directing the extrajudicial killing of four journalists. Well, I'm not sure that's the sole issue. I'm very curious to hear what you're going to say about Juice Coggins and whether it should be recognized and what its limits are. Set aside – before we get to the facts of this case. Of course, Your Honor. And I think this court need not look further than this court's decisions in Yousef and Warfa, which several years later reaffirmed the holding in Yousef, that in a circumstance where the State Department had not taken a position on immunity, this court said any violation of Juice Coggins' norms, including an extrajudicial killing like alleged here, cannot constitute official capacity conduct. And so it's not possible to afford conduct-based immunity to that official. Warfa reaffirmed that holding several years later in an opinion that you authored, Judge Agee, where there was, at the time of that decision, a recognized government in Somalia. And also the State Department had not made any suggestion or any submission at all in Warfa. And so the two primary distinctions that my friend offers of why this court should not apply that precedent from Yousef and Warfa are squarely answered by Warfa, which is on all fours with this case. So what would be the difference in this case if the State Department had come in and filed a suggestion of immunity here? How would that change this case? Sorry, Your Honor. We would be in a very different universe because under the Supreme Court's decision in Samatar, step one is, has the United States suggested immunity? And this court said a few years later in Yousef, if the United States does that, this court would give substantial weight to the United States' view. That hasn't happened here. And so we're only in the step two analysis where the court must independently analyze whether or not the official is entitled to conduct-based immunity. And so there's no question whatsoever of deference to the United States' views. Now what about the argument that the doctrine applies only in the criminal context and not civilian? That's not what – Your Honor, this is a civil case, and that was exactly what Yousef and Warfa was. They were both involved TVPA claims, which is exactly what's at issue here. He suggests, I guess, that maybe those are wayward opinions because international law at best recognizes it in a criminal context. Your Honor, I think the court considered that very issue in 2012 when it decided Yousef. There is some international law that goes both ways on Yousef Kogan's norms. Where do we look for international law? Sort of the settled principles of international law. I know what they are, but the problem is I hear in the newspapers daily that the notions at the high seas, South China Sea, and at the borders aren't necessarily to be honored. The question is where do we – it's just an ongoing understanding, and where do we find that understanding? Well, I think the easy answer in this case is that the court doesn't need to independently analyze international law because the outcome is controlled by Yousef and Samatar – sorry, by Yousef and Warfa. And in Yousef, this court did consider a variety of decisions from UK courts and other courts and found that the weight of international law supported this Yousef Kogan's norm. Basically, you're suggesting that, and maybe correctly so, that we as a panel don't need to explore that scope because we already have precedent that recognizes it. That's correct, Your Honor. I also want to just make clear there's no dispute here that these acts, the alleged extrajudicial killing, violate Yousef Kogan's norms. And I also want to also note that even if this court were disinclined to follow its precedent in Yousef and Warfa, which of course it should not do, there are alternative grounds here. It cannot be official capacity conduct, factor two of the conduct-based immunity test, where the sovereign has not ratified the conduct. There's really no dispute in the record that sitting here today, El Salvador has not ratified this conduct. It is criminally prosecuting Mr. Reyes Mena in El Salvador. It is seeking his arrest. What would happen if the government of El Salvador had filed a motion for the grant of immunity? I think that would probably go under the step one analysis, Your Honor, which is ultimately it would be about how the United States decided to act because as my friend argued, sovereign immunity is a recognition of comity to the foreign state. And so the executive branch would get deference in that circumstance about whether it decided to grant or was disinclined to grant a request of immunity from El Salvador. But the analysis is easier in this case because El Salvador is not saying this is official capacity conduct. He's sitting here today. That is clear from the record. My friend also has an argument based on El Salvador's view at the time that this is now a different government and it would be some sort of disrespect to El Salvador, whether it's sitting here today or the former government. But the allegations in our complaint make clear that this was not just another military operation. Even at the time El Salvador denied the killings took place, they tried to cover it up. They blocked investigations from several governments. This is a damages claim as to the government of El Salvador. That is correct, Your Honor. We're seeking damages solely from the personal assets of Mr. Reyes Mena. So even at the time, and in fact in the 1980s El Salvador tried to prosecute Reyes Mena as well. And it was only because of an amnesty law that El Salvador passed that frustrated that prosecution and has led now to the prosecution taking place today. And so even that argument about this was official capacity conduct at the time doesn't hold water based on the facts as we have alleged them. And that's at Joint Appendix 25 through 27 and 33. Briefly, I also just want to note that there is no circuit split here. This was a key aspect of my friend's arguments in the brief. And we would submit that the case would come out exactly the same way under either Dogen from the 9th Circuit or Matar in the 2nd Circuit. And that is because each of those cases, as well as the 5th Circuit in a recent case, all recognize that there cannot be official capacity conduct where the foreign government has disavowed the action. I gather underlying all of this is a recognition that sovereigns respect each other's sovereignty. And so that the views of the sovereigns themselves are relevant to looking how to treat these things. But it goes further than that. But it seems to me that the State Department's standing and El Salvador's standing to comment relevantly on this type of thing flows from the international relationship, the relationship among sovereigns. That is correct, Your Honor. It is well recognized since the schooner exchange from Justice Marshall that sovereignty is an act of recognition from one state to another. And that's what makes this decision an easy one we would submit because here El Salvador – Well, it starts – at least it gets by the notion that there might be barriers if the two sovereigns here requested immunity or advised immunity. But since both don't, that leaves it more open for the court to look at the conduct and international practices of law. In our case, some precedents. That is correct, Your Honor. All we have here is the former official himself who's been out of government for several decades, living comfortably in Virginia. He's the only person asking for immunity in this case, no fellow sovereign. Just to briefly conclude again, this is not sort of the standard military operation which was the case in the Ninth Circuit case and the Second Circuit case, Matar and Dogen. Both of those cases involved legitimate military targets. They were going after Hamas victims. They were enforcing a blockade. So both of those were Israeli defense folks, right? Correct, Your Honor. And in both of those cases, Israel said to the United States diplomatically, this is official capacity conduct. The United States agreed and issued a suggestion of immunity to those courts, and those courts recognized it. And so it's just not at all what we're faced with here where no sovereign has taken a position. If there's no further questions, I have nothing further. Thank you, Your Honor. We'd ask that you affirm the district court's decision below. Your Honors, I believe the last point addressed by my friend on the other side regarding the facts of Matar and Dogen is exactly why the Jus cogens exception should not be applicable here. Here, what they've done is they've characterized this as a Jus cogens allegation that there was intentional targeting of the journalists. But in a military operation like this, any number of different outcomes could have occurred. It could have been a planned military ambush in which the Dutch journalists were collateral damage, such as the facts of Matar and Dogen, but they characterize it otherwise. Wasn't there evidence that the fact that these journalists were foreign journalists, Dutch journalists known at the time? They were known, but it doesn't mean that – Known by your client. Your Honor, that's the allegation. My client does not – again, this goes to the merits, and that's the very essence of the issue of this. That's the nature of the conduct, though, too, isn't it? I mean if you shoot unarmed prisoners or you shoot civilians, you go into a village and just shoot civilians because they live in the country. But that's not what occurred here, Your Honor. I know, but I'm hypothetically talking about those circumstances would be not part of the military operation impliedly authorized by the sovereign. In that situation where you go in and just kill innocent civilians who live in a village, that would be very different. But here there were armed guerrillas involved on the outside of the operation, and this is at night in a hotly contested war zone. That's what the other side alleges. Now, when we shift away from the facts and go back to the law, this whole notion of jus cogens really is not a doctrine of U.S. law. It's a principle of international law, but that principle in international law has only been applied in the criminal context and where the jus cogens violations occurs in the forum state. So if that's so, how do you characterize our decisions on that? Your Honor, the decision there in Youssef, again – Are they both – take the second one, Warfa. Well, Warfa really – the counsel there, again, conceded and did not try to distinguish Youssef and the Warfa matter. But in Youssef, it was a situation in which – We still applied the doctrine, didn't we, in a civilian context? That's right. That's right. Warfa did, but the point – And so was that error? Your Honor, we're not saying that it was – that should be overruled and it should be overturned. We're saying we have to look at the facts of the matter here. And as a matter of federal common law, when we apply it here, the allegations of jus cogens violations, it might be relevant to whether immunity should attach, and that was what Youssef and Warfa said. But we don't believe the court should extend that to this case as a matter of what is federal common law. If we talk about where this whole doctrine of immunity comes from, it's really as a matter of advancing executive foreign policy. And the executive branch throughout the decades have come out and said we oppose a jus cogens exception. And I think the reason why is very important as this court considers what impact – It seems to me your argument is that jus cogens simply cannot be applied there. Your Honor, we're saying that there is no jus cogens exception to an immunity in which there are no waivers of immunity under the TVPA. Congress, right – so we're talking about jurisdiction here. It's really Congress that sets the jurisdiction of Article III courts. And they could have allowed the suit by either, one, stripping foreign states of immunity for jus cogens violations or, two, enacting a waiver of immunity in the TVPA. But they did neither. The Fifth Circuit has found that. The Ninth Circuit has found that as well, the Obiano case and the Dogen case. And I think that's very important because Congress was dealing with claims that essentially dealt with allegations of jus cogens violations. It was at their forefront. Yet they chose not to enact any waivers. And that's, again, a key point here because it also leads to what the executive branch has warned against. They want to protect U.S. foreign officials and our troops abroad from facing a similar fate if this exception were to be applied generally. And really for what? Again, this fiction that no sovereign can officially authorize conduct violating jus cogens. Our Supreme Court shattered that legal fiction in Nelson v. Saudi Arabia. They said that a sovereign's exercise of its police powers, however monstrous, remains a sovereign act. And also the Supreme Court has recognized the majority international view is not to apply jus cogens exceptions in civil cases. I see my time is up. Thank you, Your Honor. Thank you. We'll come down and greet counsel and proceed on to the last case.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee